

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-2004

# Ashton v. Whitman

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3476

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ashton v. Whitman" (2004). *2004 Decisions.* Paper 828.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/828

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 03-3476

LAWRENCE R. ASHTON, SR.; LAWRENCE R. ASHTON,
JR.; SAMUEL M. CURIO; DENNIS FORAND,
Appellants

v.

CHRISTINE TODD WHITMAN; WILLIAM FAUVER; DEBBIE
FAUNCE; SCOTT FAUNCE; TIMOTHY DILL; RICHARD HULEY;
PETER SCHEPELENKO; JOHN DOE(S), I UNLIMITED
(DEPARTMENT OF CORRECTIONS/AND/OR BAYSIDE STATE
PRISON INTERNAL AFFAIRS INVESTIGATORS); JOHN DOE(S)
II UNLIMITED (DEPARTMENT OF CORRECTIONS /AND/ OR
BAYSIDE STATE PRISON ADMINISTRATORS); JOHN DOE(S),
III UNLIMITED (DEPARTMENT OF CORRECTION /AND/ OR
BAYSIDE STATE PRISON ASSISTANT ADMINISTRATORS);
JOHN DOE(S), IV (DEPARTMENT OF CORRECTIONS /AND/
OR BAYSIDE STATE PRISON CAPTAINS); JOHN DOE(S), V
(DEPARTMENT OF CORRECTIONS /AND/ OR BAYSIDE STATE
PRISON LIEUTENANTS); JOHN DOE(S), VI (DEPARTMENT OF
CORRECTIONS /AND/ OR BAYSIDE STATE PRISON SERGEANTS);
STATE OF NEW JERSEY; NEW JERSEY DEPARTMENT OF CORRECTIONS

_____

On Appeal from the United States District Court
for the District of New Jersey
District Judge: The Honorable Robert B. Kugler
(Civ. A. No. 01-CV-01379)

Argued March 24, 2004
Before: FUENTES, SMITH, and GIBSON, *Circuit Judges*,[*]

_____

[*] The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

(Filed: April 15, 2004 )

Frederick A. Jacob (argued)
Jacob, Ferrigno & Jesperson
600 West Main Street
P.O. Box 429
Millville, NJ 08332

*Attorney for Appellants*

Patrick DeAlmeida (argued)
Elizabeth A. Pascal
P.O. Box 112
Office of Attorney General of New Jersey
Department of Law & Public Safety
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Attorney for Appellees*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Appellants in this case, Lawrence R. Ashton, Sr., Lawrence R. Ashton, Jr., Samuel M. Curio, and Dennis R. Forand, are current and former officials of the New Jersey Department of Corrections (the "DOC") at Bayside State Prison ("Bayside"). Each of the Appellants was the subject of disciplinary proceedings in connection with allegedly improper activities at Bayside. Each of the Appellants, however, entered into a settlement with the DOC in which all disciplinary charges were dropped. After the disciplinary proceedings were terminated, Appellants learned that DOC officials had destroyed

2

documents related to their allegedly improper conduct. Appellants argue that failure by DOC officials to disclose these documents to Appellants prior to settlement denied the Appellants due process of law in violation of the Fourteenth Amendment to the United States Constitution. The District Court granted summary judgment in favor of the DOC officials. Because we conclude that Appellants were provided with all the process that they were due, we will affirm the judgment of the District Court.

I.

In April of 1996, the former Commissioner of the DOC, William H. Fauver, ordered Sgt. Richard Huley to conduct a fact-finding inquiry into complaints raised by the New Jersey Superior Officer's Law Enforcement Association (the "Union") regarding conditions at Bayside. During the course of his investigation, Sgt. Huley believed that he had uncovered criminal conduct on the part of Appellants, including the maintenance of a slush fund at the prison's recycling center, the use of state equipment on Ashton Jr.'s private property, and an arrangement with private corporations which allowed those corporations to dispose of used tires and wood pallets on prison property.

On August 26, 1996, Sgt. Huley prepared a written report detailing the Appellants' alleged criminal conduct. The report is organized according to the statutes alleged to have been violated. For each statute, the text of the statute is provided, followed by a recitation of the facts establishing a violation. The August 26 report also provides

3

selected case law annotations from New Jersey Statutes Annotated (West).[1]

In August 1996, at Commissioner Fauver's request, the DOC's Internal Affairs Bureau ("IAB") commenced a formal investigation into Sgt. Huley's allegations. At some point after the investigation had commenced, the Chief of the IAB, Debbe Faunce, received copies of Sgt. Huley's reports. Chief Faunce testified in deposition that the reports were not used in the investigation because the reports were "nonsense," because Sgt. Huley was not authorized to conduct a criminal investigation, and because Sgt. Huley was not qualified to draw legal conclusions regarding the applicability of individual statutes to his findings. Chief Faunce testified that she ordered all copies of the report destroyed after berating Sgt. Huley for overstepping the parameters of his fact-finding inquiry.

In addition to the two reports, Sgt. Huley communicated with Commissioner Fauver about the progress of his investigation several times per week, either by calling, writing, or delivering written documentation. Sgt. Huley maintained detailed notes regarding his investigation, including synopses of interviews he conducted with individuals at Bayside. These notes indicated, *inter alia*, whether certain witnesses "would cooperate, were scared or [were] hostile." Appellants' Br. at 7. Sgt. Huley testified that, along with his reports, he destroyed his notes and other documentation

---

[1] On September 3, 1996, Sgt. Huley prepared a supplemental report intended to provide "a more detailed explanation" of the alleged statutory violations. This second report, however, merely duplicates the statutory text and annotations contained in the August 26 report and does not provide any discussion of the Appellants' conduct.

4

pertaining to the investigation (the "Huley documents") at Chief Faunce's orders.  Chief Faunce, however, testified that she was unaware of any documents beyond the two reports.

At the conclusion of the IAB investigation, formal disciplinary charges were brought against Appellants seeking their removal.  Each Appellant was offered two hearings, one prior to being suspended without pay, and another hearing prior to termination.  Prior to the hearings, each Appellant was provided a "Preliminary Notice of Disciplinary Action" that itemized the charges against him and identified the statutes and regulations alleged to have been violated as well as the conduct allegedly comprising the violations.  The DOC also provided each Appellant with a pre-hearing package containing copies of all documentary evidence that was going to be used against them at the final hearings, along with a list of all the witnesses who would testify at those hearings.  Sgt. Huley was not listed as a witness.  The pre-hearing package, however, did contain a one-page statement by Sgt. Huley.  Each of the Appellants was represented by counsel during the course of the disciplinary proceedings.

At the outset of the disciplinary proceedings, Appellant Ashton, Sr.'s counsel sent a letter to George Bruner, the Chief of the DOC's Hearings Section, requesting "all competent discovery in the file, including all written reports, notations of oral statements, a list of witnesses and addresses, and any and all other evidence that will be presented against Mr. Ashton."  Based on this letter, Ashton, Sr. and his counsel assumed that the

5

pre-hearing package contained "all written reports and <u>all</u> notations of oral statements, including those that might help exonerate the client." Appellants' Br. at 11.

Prior to the final hearings, each of the Appellants entered into settlement agreements with the DOC. Ashton, Sr. agreed to voluntarily retire with full retirement pay and benefits; Ashton, Jr. agreed to a ninety-day suspension; Curio agreed to resign from his position in good standing; and Forand agreed to a forty-five-day suspension. In return, the DOC dropped all disciplinary charges against Appellants.

Subsequent to the settlements, Appellants learned of Sgt. Huley's investigation and the Huley documents. On March 22, 2001, Plaintiffs filed a complaint against the State of New Jersey, Governor Christine Todd Whitman, the DOC, Commissioner Fauver, Chief Faunce, and other DOC officials, alleging state law claims for wrongful discharge, defamation, intentional spoliation of evidence, and fraud, as well as causes of action under 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment. On March 8, 2002, the District Court dismissed the state law claims for failure to comply with the New Jersey Tort Claims Act. The District Court also dismissed the § 1983 claims against the State, Governor Whitman, and the DOC, and all § 1983 claims seeking damages from the individual defendants in their official capacity.

On July 28, 2003, the District Court granted summary judgment against Appellants on the remaining § 1983 claims, *i.e.*, those claims seeking injunctive relief from the individual defendants in their official capacities, and those seeking injunctive relief and

6

damages from those defendants in their individual capacities. A timely appeal was filed

on August 15, 2003. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1343(a)(3). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellate

review over a grant of summary judgment is plenary. *McCurdy v. Dodd*, 352 F.3d 820,

825 (3d Cir. 2003).

II.

Appellants maintain that "the reports, notes, and memos prepared by Sgt. Huley

contained, and would have led to, exculpatory information and should have been turned

over to their attorneys upon the attorney's request for all documentary evidence that was

going to be used against them in the disciplinary hearing." Appellants' Br. at 14.

Appellants argue that the failure to disclose these documents violates the Due Process

Clause of the Fourteenth Amendment.

The parties agree that New Jersey law provides Appellants a property interest in

their employment that is protected under the Due Process Clause of the Fourteenth

Amendment. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). The Government,

however, has a corresponding, strong interest in removing unsatisfactory employees. *See*

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

In *Loudermill*, the Supreme Court held that a public employee dismissable only for

cause was entitled to a very limited hearing prior to his termination, to be followed by a

more comprehensive post-termination hearing. *Id.* at 547-48. This pre-termination

hearing "need not be elaborate." *Id.* at 545. Instead,

> [t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546 (citations omitted).

There is no question that the Appellants were provided with more than the minimum procedural safeguards identified in *Loudermill*. Each Appellant was offered two hearings, and was provided with an exhaustive explanation of the disciplinary charges against him as well as the evidence in support of those charges.

Nonetheless, appellants argue that, in addition to "an explanation of the employer's evidence," *id.* at 546, due process required the DOC to disclose any material, exculpatory evidence in its possession. Appellants cite no authority for this proposition, which effectively superimposes the rule in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), onto non-criminal employment disciplinary proceedings. Other courts have declined to extend *Brady* in this manner. *See Swank v. Smart*, 898 F.2d 1247, 1254-55 (7th Cir. 1990); *Lee v. Hutson*, 810 F.2d 1030, 1032-33 (11th Cir. 1987); *Leftwich v. Bevilacqua*, 635 F. Supp. 238, 241 (W.D. Va. 1986).

Appellants' argument that they were entitled to any information that might have been relevant to their decision to settle the disciplinary charges against them misconceives the nature and purpose of pre-termination employment disciplinary

proceedings. The private interest deserving constitutional protection in this case is the Appellants' continued employment with the state. The procedures required by *Loudermill* and followed by the DOC are "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545-46. These procedures "need not definitively resolve the propriety of the discharge," *id.* at 545, and Appellants' voluntary decision to settle the charges against them at this stage of the disciplinary process does not entitle them to greater procedural protection.

Recognizing the limited purpose of pre-termination proceedings, courts have held that due process does not require an employer to provide every piece of evidence relevant to an employee's termination. In *Derstein v. Kansas*, 915 F.2d 1410, 1413 (10th Cir. 1990), the Tenth Circuit held that due process did not entitle an employee to review transcripts of a government investigation into sexual harassment allegations against the employee. *Derstein* was cited with approval by this Court in *McDaniels v. Flick*, 59 F.3d 446, 457 (3rd Cir. 1995), where we held that "pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee the opportunity to determine what facts, if any, *within his knowledge* might be presented in mitigation of or in denial of the charges" (Internal quotation omitted) (emphasis added).

We therefore decline Appellants' invitation to extend *Loudermill*, which struck the

appropriate balance between the competing interests of the employees and the state, and the risk of an erroneous termination. 470 U.S. at 542-43 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). We conclude that requiring mandatory disclosure of material, exculpatory evidence prior to termination "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546.

To avoid summary judgment, then, Appellants were obligated to explain how the failure to disclose the Huley documents prevented Appellants from fully understanding the charges against them or the DOC's evidence in support of those charges. Appellants attempt no such argument. Instead, the undisputed record before the District Court establishes that Appellants were given all the process they were due under *Loudermill*: they were given notice of the charges against them, a thorough itemization of the evidence to be used against them, and an opportunity to be heard. Defendants were therefore entitled to judgment as a matter of law on Appellants' due process claim.

Appellants' contention that the District Court made impermissible credibility determinations regarding the purpose, use, and content of the destroyed reports has no consequence in this appeal.[2] Instead, summary judgment was proper on Appellants' due

---

[2] Even assuming that due process requires some sort of *Brady*-esque disclosure before a public employee can be terminated, Appellants have offered no evidence that the Huley documents are either material or exculpatory. *See United States v. Bagley*, 473 U.S. 667, 674, 682 (1985). Appellants point to Sgt. Huley's deposition testimony in which he opined that he had uncovered "favorable" witnesses:

process claim because, in the words of the District Court, "the DOC provided all that was required under *Loudermill*."

III.

Because we conclude that Appellants were provided all the process they were due under the Constitution, we will affirm the District Court's entry of summary judgment against Appellants.

_____

---

> Q. In 1997 had you had the benefit of your notes would you have been able to provide information to these gentlemen, Mr. Ashton, Sr., Jr., Mr. Curio and Mr. Forand of any witnesses who would have been favorable to them?
>
> A. Yes.

App. at 429. Sgt. Huley's legal conclusion is entirely insufficient to create a genuine dispute over the exculpatory nature of the documents. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). Moreover, other testimony from Sgt. Huley suggests that these favorable witnesses were neither exculpatory nor inculpatory:

> Q. Were there any corrections officers or even inmates that offered evidence or offered you any information that was favorable to Mr. Ashton, Sr., Jr., Mr. Forand, Mr. Curio?
>
> A. Other than verbal statements. There was people that thought Mr. Ashton's administration was doing a fine job at Bayside State Prison and that was relayed as well.

App. at 420. That Bayside employees thought Ashton, Sr. was "doing a fine job" has no relevance to the disciplinary charges against Ashton, Sr., or any of the other Appellants. Accordingly, Sgt. Huley's testimony provides no basis on which a reasonable trier of fact could conclude that Sgt. Huley's notes were exculpatory and/or material.

11