**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SHEILA CLARK, | DOCKET NUMBER |
| Appellant, | DC-0752-13-0661-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: February 21, 2023 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Phillip R. Kete, Esquire, Chesapeake Beach, Maryland, for the appellant.

Ashley Darbo, Esquire, and Melissa Williams, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1       The appellant has filed a petition for review of the initial decision, which sustained the inappropriate conduct charge, did not sustain the lack of candor charge, found that she did not prove any of her affirmative defenses, and upheld

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the removal penalty. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to clarify the allegations of inappropriate conduct, which we sustain, and to supplement the administrative judge's analysis of the appellant's claims of a due process violation, prohibited discrimination, and reprisal for whistleblowing disclosures. We VACATE the administrative judge's penalty analysis, but we FIND that the removal penalty was reasonable based on the sustained misconduct. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2 The relevant background information, as recited in the initial decision, is generally undisputed. Initial Appeal File (IAF), Tab 91, Initial Decision (ID). The appellant was a Senior Executive Service (SES) employee in the Chief Component Human Capital Officer (CCHCO) position at the Federal Emergency Management Agency (FEMA). ID at 1-2. The agency initiated an investigation of the appellant in response to an anonymous allegation that she had engaged in prohibited personnel practices. ID at 2; IAF, Tab 60 at 40-41. As a result of this

investigation, the agency determined that the appellant misused her position to help a friend obtain employment at FEMA and provided him with personally identifiable information of FEMA employees. ID at 2; IAF, Tab 19 at 15-16, 134-35.

¶3 Effective May 6, 2013, the agency removed the appellant from her CCHCO position based on charges of inappropriate conduct and lack of candor. ID at 2; IAF, Tab 6 at 39-52. The appellant filed a Board appeal, requested a hearing, and asserted several affirmative defenses. ID at 2; IAF, Tabs 1, 57, 65-68. The appellant subsequently withdrew her hearing request. ID at 2-3; IAF, Tab 75 at 2-3. The administrative judge issued an initial decision that sustained the inappropriate conduct charge (but not all of the allegations therein), did not sustain the lack of candor charge, found that the appellant did not prove any of her affirmative defenses, and concluded that the removal penalty was reasonable. ID at 3-34.

¶4 The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 4, 7-8. On review, the appellant challenges many of the administrative judge's findings and conclusions.[2]

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved the inappropriate conduct charge.

¶5 In the single specification of this charge, the agency made the following allegations, among others, against the appellant: (1) she had a personal relationship with the friend in question; (2) she sought out a position for her friend in the month or so preceding the March 14, 2011 investigator vacancy announcement by alleging that her office had a backlog of about 80-100

---

[2] Neither party challenges the administrative judge's conclusion that the agency did not prove the lack of candor charge. We affirm the administrative judge's finding in this regard.

investigations; (3) she assisted her friend in drafting his résumé, contacted agency officials on his behalf to address prior misconduct issues, and provided her friend with résumés of other FEMA investigators;[3] (4) she informed her friend that a vacancy announcement for the investigator position was going to be issued; (5) she learned that her friend was going to be on the merit promotion certificate and directed a Human Resources Specialist not to issue the other delegated examining unit (DEU) certificate; (6) she viewed the certificate of eligibles for the position to which her friend applied; (7) she sat on the selection panel that interviewed candidates for the investigator position without disclosing to the other panel members, her supervisor, or the selecting official her prior efforts to assist her friend or her relationship with him; and (8) she provided her friend with an advantage not authorized by law, rule, or regulation. IAF, Tab 6 at 43-44.[4]

¶6     In the initial decision, the administrative judge found that the appellant and her friend shared a "close personal relationship" evidenced by the volume and content of emails between them and the "significant" time and effort that the appellant expended to assist him in his employment efforts. ID at 5-7; IAF, Tab 19 at 9 (the agency's report of investigation "conservatively" estimated that the appellant and her friend "had several hundred [email] messages that were personal in nature," which included messages on weekdays and weekends, starting as early as 5:20 a.m. and ending as late as 2:22 a.m.), 28 (the appellant stating in an email to her friend that she "can't seem to get over" him). We agree.

¶7     The administrative judge noted that it was not per se misconduct for the appellant to assist her friend with his résumé, but the misconduct arose from her participation in the interview and selection process of an applicant for whom she

---

[3] The administrative judge concluded that the agency did not prove that the appellant provided her friend with résumés of other FEMA investigators. ID at 13 n.5. Neither party challenges this conclusion on review.

[4] Although the proposal notice stated that the relevant events occurred in 2012, this appears to be a typographical error because most of the relevant events actually happened in 2011.

had demonstrated romantic feelings, coupled with her assistance in drafting and editing his résumé to submit for employment at the agency. ID at 12-20. The administrative judge therefore sustained the inappropriate conduct charge. ID at 20.

¶8     We have considered the appellant's argument that the agency "expressly" found that she violated 5 C.F.R. § 2635.702, which prohibits a Federal employee from using his or her public office for private gain, but the administrative judge did not find the appellant "guilty" of this offense. PFR File, Tab 4 at 12-14. In resolving the issue of how a charge should be construed and what elements require proof, the Board examines the structure and language of the proposal and decision notices. *Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 16 (2009).

¶9     Based on our review of the proposal and decision letters, we find that the agency's inappropriate conduct charge did not allege that the appellant violated 5 C.F.R. § 2635.702. The proposal notice contained two charges, entitled "inappropriate conduct" and "lack of candor," and included a narrative for each and a lengthy "Background" section, which discussed various aggravating factors, including the proposing official's belief that the appellant's conduct constituted a violation of 5 C.F.R. § 2635.702. IAF, Tab 6 at 39-52. The proposing official, though, does not cite to or otherwise reference 5 C.F.R. § 2635.702 in the narrative portion of the inappropriate conduct charge.

¶10    In the decision letter, the deciding official discussed the "inappropriate conduct" charge and the "lack of candor" charge under separate headings. *Id.* at 39-40. However, apart from the headings, the organization of the decision letter is confusing. For example, the deciding official stated under the "lack of candor" heading that she sustained the removal based on her decision to sustain the inappropriate conduct charge. *Id.* at 40. Under the "inappropriate conduct" heading, the deciding official noted various aggravating factors, including the seriousness of the offense, the appellant's failure to take responsibility for her

actions, her conclusion that the appellant's conduct constituted a violation of 5 C.F.R. § 2635.702, and the fact that she no longer had confidence in the appellant's ability to perform her assigned duties. *Id*.

¶11 Having reviewed the structure and content of the proposal and decision letters, we conclude that the agency did not include, as an allegation of the inappropriate conduct charge, that the appellant's conduct violated 5 C.F.R. § 2635.702. Instead, we find that the agency included the allegation that her conduct violated this regulation as an aggravating factor. Accordingly, the agency was not required to establish that the appellant violated this regulation to prove the inappropriate conduct charge.

¶12 The appellant also asserts that there is "zero evidence" to support the administrative judge's conclusion that she padded the payroll and manipulated her friend's selection. PFR File, Tab 4 at 14-30. In support of this assertion, she makes the following contentions: (1) she did not cause the posting for the investigator position or the decision to fill a second investigator position; (2) she did not restrict the number of applicants to be considered; and (3) her service on the interview panel without informing the other panel members or the selecting official of her relationship with her friend did not provide him an unfair advantage. *Id.*

¶13 We have considered the appellant's assertion that the agency did not prove its allegation that, in the "month or two preceding the [March 14, 2011] vacancy announcement," she "sought out a position for" her friend within the Office of the Chief Security Officer (OCSO) "by alleging to OCSO that [her] office had a backlog of approximately 80-100 investigations." PFR File, Tab 4 at 15; IAF, Tab 6 at 43. Although this portion of the proposal notice focused on events that occurred before the vacancy announcement was issued, the administrative judge appeared to discuss the appellant's March 29, 2011 email—which was sent after the vacancy announcement closed—to support her conclusion that the agency proved this allegation. ID at 8-9. Because this email was not sent in the "month

or two preceding" the vacancy announcement, we vacate the administrative judge's reliance on this email in her analysis of this allegation.[5]

¶14    The administrative judge acknowledged that the appellant denied falsifying backlog information to seek out a position for her friend, but she found the agency's evidence more credible on this point because the appellant's statements were inconsistent.  ID at 9.  The administrative judge further found that the agency proved by preponderant evidence that the appellant emailed OCSO officials about the investigation backlog to improve the chances for creating a vacancy for which her friend could apply.  *Id.*

¶15    When an administrative judge's findings are not based on observing witnesses' demeanor, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002).  Here, however, the consistency of the appellant's statements is a valid factor to consider in assessing witness credibility.  *Hillen v Department of the Army*, 35 M.S.P.R. 453, 458 (1987).  Moreover, there is evidence that the appellant provided backlog information of a questionable nature to agency officials before the vacancy announcement was issued.  For example, the Acting Deputy Chief Security Officer (CSO) stated in a sworn statement that, in February 2011, the appellant called for a meeting with him and the CSO to discuss the "backlog" of "approximately 80" human resources cases that needed an investigation.  IAF, Tab 19 at 111, 114.  Additionally, the Acting Deputy CSO and CSO stated in their sworn statements that it was the appellant's decision to create the investigator positions.  *Id.* at 91, 114.  Finally, the appellant admitted in her oral reply that, after reviewing a March 7, 2011 report, she emailed the Acting Deputy CSO and CSO and informed them that she had a "backlog" and

---

[5] Because we do not rely on the March 29, 2011 email in our analysis, we need not address the appellant's arguments on review regarding the effect, if any, of this email on the agency's decision to hire a second investigator under the vacancy announcement. PFR File, Tab 4 at 17-19.

needed "help." IAF, Tab 14 at 39-40. Based on the appellant's inconsistent statements regarding whether she provided backlog information to agency officials (as discussed in the initial decision), coupled with the agency's evidence that corroborates the timeline in question, we find that it was more likely than not that the appellant provided backlog information before the vacancy announcement was issued.

¶16 We also have considered the appellant's contention that the administrative judge suggested that she (the appellant) had an ulterior motive because she waited until after her friend was hired to tell the selecting official that she did not have a backlog of cases. PFR File, Tab 4 at 21; ID at 8-9. The record reflects that the selections for the investigator position were made on April 14, 2011, the appellant's friend was presented with the agency's offer on or around May 12, 2011, the appellant advised the selecting official that she did not have a backlog on or after May 18, 2011, and her friend's employment began on June 5, 2011. IAF, Tab 19 at 113, 126, 129, Tab 23 at 107, Tab 82 at 89. Given these facts, even if the administrative judge somehow erred in her characterization of the relevant chronology, her error is not prejudicial to the appellant's substantive rights and does not provide a basis for reversing the initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶17 On review, the appellant contends that her participation in the interview and selection panel did not favor her friend because the other two panelists would have recommended him for the other vacancy, and thus he was not given an advantage as described in the proposal notice. PFR File, Tab 4 at 25-28. We disagree with the appellant's narrow characterization of the relevant language. Rather, we find that the agency's allegation in the proposal notice—that the appellant's "course of conduct was unfair to the other applicants for the position, as it provided [her friend] with an advantage not authorized by law, rule, or regulation"—refers to the entirety of her course of conduct and not merely her

decision to sit on the selection panel.[6] IAF, Tab 6 at 44. The proposal notice stated in the alternative that, even if the appellant did not intend to give her friend such an advantage, her actions "clearly demonstrate a profound lack of judgment." *Id.* We agree with the agency that the sustained misconduct evidences poor judgment on the appellant's part. *See, e.g.*, *Drayton v. Equal Employment Opportunity Commission*, 11 M.S.P.R. 43, 44, 46 (1982) (concluding that the appellant exhibited a "serious lack of judgment" when he twice used a Government credit card to pay for gasoline for his personal vehicle). We therefore sustain this allegation.

¶18      We need not address the appellant's argument that she did not restrict the number of applicants to be considered or otherwise direct anyone not to issue the DEU certificate. PFR File, Tab 4 at 22-24. Even if we were to find that the agency did not prove these allegations, we still would sustain the inappropriate conduct charge. *See, e.g.*, *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge). For the reasons discussed below, *infra* ¶¶ 33-43, we further find that the removal penalty is warranted based on the sustained allegations of the inappropriate conduct charge.

---

[6] The proposal notice alleged that the appellant did not advise "other panel members, [her] supervisor, or the selection authority of [her] efforts to assist [her friend] with his résumé or that she had a social relationship with him that went beyond being prior coworkers." IAF, Tab 6 at 44. The appellant asserts on review that the decision letter did not mention withholding such information from the selecting official or her supervisor, and the administrative judge improperly "added [this allegation] back into the charge." PFR File, Tab 4 at 25-26 (citing ID at 17). Regardless of whether we consider the appellant's failure to disclose this information to the other panel members, her supervisor or the selecting official, we would still sustain the inappropriate conduct charge based on the totality of the misconduct as described herein.

The appellant did not prove her affirmative defenses.

¶19    The appellant asserted various affirmative defenses, including harmful procedural error, a due process violation, discrimination, and reprisal for whistleblowing disclosures.[7]    As set forth below, we have considered her arguments concerning these defenses, but a different outcome is not warranted.

*Due process and harmful procedural error*

¶20    On petition for review, the appellant renews her argument that the agency violated her right to due process by withholding certain favorable evidence during the removal process, i.e., a December 10, 2012 supplemental report of investigation that included a document stating that the "Program requested [Merit Promotion/Noncompetitive] certs[sic] only." PFR File, Tab 4 at 30-31; IAF, Tab 25 at 114-15.  She argues that had she known of this evidence prior to her removal, she could have brought it to the deciding official's attention.  PFR File, Tab 4 at 31.

¶21    We observe that the appellant is not arguing that the deciding official considered ex parte information in reaching her decision.  *Cf.   Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999) (discussing the due process implications of a deciding official's consideration of ex parte information).  Instead, she is arguing that the agency withheld certain exculpatory information from both her and the deciding official.  PFR File, Tab 4 at 30-31.  In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39, 546-48 (1985), the Supreme Court held that a tenured public employee has a constitutionally protected property interest in ongoing public employment and that an agency may not deprive such an employee of his property interest without providing him due process of law, including the right to advance notice of the charges against him, an explanation of the agency's evidence, and an opportunity

---

[7] The appellant does not challenge the administrative judge's conclusion that she did not prove her disability discrimination claim.    ID at 27.    We affirm the administrative judge's finding in this regard.

to respond. However, courts have consistently declined to extend the holding in *Loudermill* to similar fact patterns, and we see no basis to take a different approach. *E.g.*, *Yee v. Bureau of Prisons*, 348 F. App'x 1, 2 (5th Cir. 2009); *Ashton v. Whitman*, 94 F. App'x 896, 900-02 (3rd Cir. 2004); *Lee v. Hutson*, 810 F.2d 1030, 1030-34 (11th Cir. 1987); *National Labor Relations Board v. Nueva Engineering, Inc.*, 761 F.2d 961, 969 (4th Cir. 1985).

¶22    Likewise, for the reasons described in the initial decision, we agree with the administrative judge that, even if the agency committed a procedural error in this regard, it was not harmful because the agency would have removed the appellant in the absence of this error. ID at 29-30; *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991).

*Reprisal for whistleblowing disclosures*[8]

¶23    In the initial decision, the administrative judge determined that the appellant made protected whistleblowing disclosures that were a contributing factor in the agency's decision to remove her. ID at 22-24.[9] The administrative judge determined, however, that the agency proved by clear and convincing evidence that it would have removed her in the absence of her whistleblowing disclosures. ID at 24-25. On review, the appellant briefly challenges the administrative judge's analysis of the clear and convincing standard. PFR File, Tab 4 at 37.

¶24    In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of

---

[8] The administrative judge appeared to analyze this claim without referencing the Whistleblower Protection Enhancement Act of 2012 (WPEA). Pub. L. No. 112-199, 126 Stat. 1465. However, the appellant's removal occurred after the December 27, 2012 effective date of the WPEA. WPEA, § 202. Although not raised by the appellant on review, we have considered the WPEA amendments as they pertain to this case, but they do not warrant a different outcome.

[9] Because neither party challenges the administrative judge's determination that the appellant satisfied her prima facie burden, ID at 22-24, we affirm it herein.

whistleblowing disclosures or protected activity,[10] the Board will typically consider the strength of the agency's evidence in support of its action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers or who did not engage in protected activity but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[11]

¶25        The appellant only appears to challenge the administrative judge's evaluation of the first *Carr* factor involving the strength of the agency's evidence. PFR File, Tab 4 at 37; ID at 24.  For example, the appellant states that some of the alleged misconduct was not relied upon by the agency (such as the allegation that she provided misleading backlog information in late March 2011) or did not occur (such as the allegation that she instructed an agency official not to issue the DEU certificate, persuaded the selecting official to fill a second investigator position, and convinced the other members of the interview panel to recommend her friend for the second position).  PFR File, Tab 4 at 37.  The documentary evidence supports most of the agency's allegations in the inappropriate conduct charge.  Moreover, the appellant does not deny that she sat on the interview and selection panel for the investigator position, which we find to be the most egregious misconduct under the circumstances.  Because we have sustained most,

---

[10] Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).

[11] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

though not all, of the allegations in the inappropriate conduct charge and the charge itself, we conclude that the agency's evidence is strong.

¶26      We modify the initial decision to supplement the administrative judge's analysis of the remaining factors. Consistent with guidance from the Federal Circuit, we have considered all of the pertinent evidence, including the evidence that detracts from the conclusion that the agency met its burden. *See Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The administrative judge noted in the initial decision that the appellant, who knew of the information contained in her disclosures for some time, did not make her disclosures until after the agency initiated an investigation into her alleged misconduct. ID at 25. The administrative judge also determined that there was "no particular motive" on the part of the proposing and deciding officials to retaliate against the appellant for her whistleblowing disclosures. ID at 24-25. Indeed, it does not appear that the appellant's disclosures directly implicated the proposing or deciding officials; we recognize, however, that those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures as the criticism reflects on them in their capacities as managers and employees. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65; *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29. Thus, we modify the initial decision to find that this factor may weigh slightly in the appellant's favor.

¶27      We also have considered whether there is any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. The deciding official stated in her penalty factors worksheet that the penalty is consistent with those imposed upon other employees for the same or similar offenses. IAF, Tab 8 at 12. However, the agency has not clearly identified any evidence to support this assertion. The Federal Circuit has held that if there is no comparator evidence, *Carr* factor 3 cannot weigh in favor of the Government. *Soto*, 2022 MSPB 6, ¶ 18; *see Smith v. General Services*

*Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Thus, this element cannot weigh in the agency's favor.

¶28    Based on our review of the evidence, we find that the *Carr* factor 1 (namely, the sustained misconduct coupled with the appellant's high rank and position within the agency) outweighs the other two *Carr* factors. Accordingly, we are left with a firm belief that the agency would have removed her absent her whistleblowing disclosures. *See, e.g.*, *Carr*, 185 F.3d at 1326 (stating that the whistleblower protection statutes are not meant to protect employees from their own misconduct).

*Race and sex discrimination*

¶29    In the initial decision, the administrative judge applied the standard for analyzing Title VII claims set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015), and concluded that the appellant did not prove that the removal action was motivated by race or sex. ID at 25-26. On review, the appellant asserts that the administrative judge erred by applying *Savage* instead of applying the analytical framework identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). PFR File, Tab 4 at 35-36. She also asserts that the agency's allegations were a pretext for discrimination because the agency presented no credible evidence that she provided false workload information to secure the vacancy announcement in question, ordered a subordinate not to prepare the other certificate, or biased the interview panel in her friend's favor. *Id.* at 36.

¶30    At the time that the administrative judge issued the initial decision in this case, our case law provided that *McDonnell Douglas* was inapplicable to Board proceedings. *Savage*, 122 M.S.P.R. 612, ¶ 46. However, while this case was pending on petition for review, the Board overruled *Savage* in that regard and held that the *McDonnell Douglas* framework is one of several methods by which an appellant may prove a claim of disparate treatment discrimination in a Board

appeal. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-24. Nevertheless, for the following reasons, we find that application of the *McDonnell Douglas* does not change the outcome of the instant appeal.

¶31    In *McDonnell Douglas*, 411 U.S. at 802-04, the U.S. Supreme Court held that to establish a claim of prohibited employment discrimination, the employee first must establish a prima facie case; the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. Because the agency in this case has already proffered a nondiscriminatory reason for its action, we proceed to the ultimate question of whether the appellant has proven her claim of discrimination, i.e., whether the agency's reasons for its action were pretextual. *See U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983). A complainant can show pretext in two ways, "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

¶32    In this case, the reasons that the agency proffered for its removal action are clear, straightforward, and largely supported by the evidence of record. Although the agency failed to prove the lack of candor charge and some specifications of the inappropriate conduct charge, on balance, we find little reason to view the removal action as a whole as suspect. Nor has the appellant presented sufficient evidence to raise an inference of discrimination. She identified thirteen non-African American employees whom the agency investigated for various infractions, but whom the agency treated differently during their investigations by, for example, not reassigning them during the pendency of the investigation. IAF, Tab 82 at 33-36. However, she has not established that any of these individuals are proper comparators for purposes of a Title VII disparate treatment

analysis because there is no evidence that any of these individuals reported to the same supervisor, was subjected to the same standards, or engaged in similar misconduct. *See Hooper v. Department of the Interior*, [120 M.S.P.R. 658](#), ¶ 6 (2014); *Spahn v. Department of Justice*, [93 M.S.P.R. 195](#), ¶ 13 (2003). Considering the evidence as a whole, we find that the agency's removal action was not discriminatory, and we affirm the administrative judge's conclusion that the appellant did not prove her affirmative defense.[12] *See Michal G. v. Department of Veterans Affairs*, EEOC Appeal No. 2021001945, 2022 WL 2701942, *4 (June 30, 2022).

<u>We vacate the administrative judge's penalty analysis and conclude that removal was a reasonable penalty for the sustained misconduct.</u>

¶33    In the initial decision, the administrative judge cited *Suarez v. Department of Housing and Urban Development*, [96 M.S.P.R. 213](#), ¶ 47 (2004), *aff'd*, 125 F. App'x 1010 (Fed. Cir. 2005), for the standard of review for evaluating the penalty. Although the appellant did not specifically challenge the administrative judge's applying this standard on review, we find that it was improper. In *Suarez*, [96 M.S.P.R. 213](#), ¶ 47, the Board sustained two of four specifications of the first charge, the first charge itself, and the second charge. The Board noted that when all of the agency's charges are sustained, but not all of the underlying

---

[12] In the initial decision, the administrative judge noted that the appellant argued that her removal was motivated by reprisal for equal employment opportunity activity, but she did not preserve the argument in response to the affirmative defenses order, did not pursue it in her prehearing submission, and did not allege facts in her closing argument to support such a claim. ID at 26 & n.14. The administrative judge therefore concluded that the appellant did not meet her burden of proof concerning this claim. ID at 26. On review, the appellant refers to claims of "race discrimination and reprisal" and "race and sex discrimination and reprisal," PFR File, Tab 4 at 35, but she does not explain or articulate her reprisal claim or how the administrative judge's conclusion was erroneous. A petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record. *Tines v. Department of the Air Force*, [56 M.S.P.R. 90](#), 92 (1992). Because the appellant's petition for review does not contain such specificity, we need not address this issue further.

specifications are sustained, the agency's penalty determination is entitled to deference and should be reviewed to determine whether it is within the parameters of reasonableness. *Id.* By contrast, in this matter, the administrative judge did not sustain the lack of candor charge. Because the administrative judge did not sustain all of the charges, her reliance on the *Suarez* standard was improper, and we vacate the administrative judge's penalty analysis.

¶34        Instead, we find it appropriate to rely on the standard identified in *Tartaglia v. Department of Veterans Affairs*, 858 F.3d 1405, 1407-08 (Fed. Cir. 2017). There, the Federal Circuit reviewed the Board's penalty determination in a case in which it had sustained only one of the specifications of one of the charges against Mr. Tartaglia. Relying on its earlier decision in *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999), the court in *Tartaglia* stated that, when the Board sustains fewer than all of the agency's charges, it may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Tartaglia*, 858 F.3d at 1408. The court noted that the agency did not indicate that it desired that a lesser penalty be imposed based on the single sustained specification and charge, and the Board therefore had to determine the maximum reasonable penalty to be imposed in the first instance. Due to an error committed by the Board in its penalty analysis, the court remanded the appeal for the Board to determine a penalty less than removal. *Id.* at 1408-10.

¶35        We have reviewed the decision letter, the deciding official's penalty factors worksheet, and her declaration, which memorialized her evaluation of the relevant penalty factors. IAF, Tab 6 at 39-42, Tab 8 at 10-14, Tab 79 at 303-12. The deciding official in this matter stated that she sustained the removal based on the most serious charge sustained, that is, the inappropriate conduct charge. IAF, Tab 6 at 40. We also have considered the relevant penalty factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), including, but not

limited to, the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities, the appellant's past disciplinary record and work record, the clarity with which the appellant was on notice of any rules that were violated in committing the offense, the potential for the appellant's rehabilitation, and mitigating circumstances. Based on our review of these factors, we find that removal is a reasonable penalty for the sustained misconduct.

¶36       We have considered the appellant's allegations on review regarding the agency's improper evaluation of certain *Douglas* factors, including her past disciplinary record, the clarity with which she was on notice of any rules that were violated, the supervisor's confidence that she can perform at a satisfactory level, her potential for rehabilitation, and the adequacy of alternative sanctions. PFR File, Tab 4 at 31-35. However, these arguments do not persuade us that a different penalty is warranted.

¶37       Regarding her past disciplinary record, the appellant contends that the agency treated her 28 years of "discipline-free service" as a neutral, instead of as a mitigating, factor. *Id.* at 32. It is true that the deciding official indicated that the appellant's lack of disciplinary history was a neutral factor, but she also noted that her 28 years of Federal service was a mitigating factor. IAF, Tab 8 at 11, Tab 79 at 308. Even if we considered the appellant's length of service and lack of disciplinary history as mitigating factors, such factors would not outweigh the very serious allegations that we sustained concerning the inappropriate conduct charge. *See Brough v Department of Commerce*, 119 M.S.P.R. 118, ¶ 11 (2013) (stating that the nature and seriousness of the offense and its relationship to the employee's duties and responsibilities is the most important *Douglas* factor in determining the appropriate penalty).

¶38       Regarding the clarity with which she was on notice of any rules that were violated, the appellant criticizes the deciding official's statement that "[w]ithholding information during an investigation is a serious offense and a

member of the SES is held to a higher standard." PFR File, Tab 4 at 34; IAF, Tab 8 at 13.[13] We do not read this excerpted language in isolation. Rather, leading up to the quoted language, the deciding official stated that because the appellant was a member of the SES, she should be aware of the ethical standards of her position. IAF, Tab 8 at 13. Additionally, the deciding official noted that, as the CCHCO, the appellant guided hiring processes and held a position of expertise in the field of Federal human resources; thus, she was on clear notice of the rules that were violated. *Id*. Given the nature of the appellant's position, we discern no error with the deciding official's analysis of this penalty factor.

¶39    The appellant also challenges the deciding official's decision to treat her potential for rehabilitation as a neutral factor based on the fact that she "has taken no responsibility for her actions and has expressed no remorse." PFR File, Tab 4 at 34-35; IAF, Tab 8 at 13. This argument is not persuasive. Indeed, the appellant has not taken responsibility for her actions, and she does not seem to appreciate the gravity of her misconduct, which is made more egregious by her SES status and her CCHCO position. We therefore find no error with the deciding official's conclusion that the potential for rehabilitation was a neutral factor. *See, e.g.*, *Dolezal v. Department of the Army*, 58 M.S.P.R. 64, 66-67, 71 (1993) (holding that the appellant, who was removed on two misconduct charges, exhibited little, if any, potential for rehabilitation and did not appear to understand that he was held to a higher standard of conduct because of his SES status and because his position made him the Training and Doctrine Command's

---

[13] The appellant appears to assert that the offense of withholding information during an investigation "was never mentioned" in this case. PFR File, Tab 4 at 31. However, we believe that the deciding official's statement is a reference to the lack of candor charge. IAF, Tab 6 at 40 ("[I]t is clear you did withhold information from investigators regarding your level of involvement in [your friend's] hiring process."). Because we do not sustain the lack of candor charge, we do not consider the deciding official's statement in this regard in our penalty analysis.

highest-ranking personnel policy maker), *aff'd*, 22 F.3d 1104 (Fed. Cir. 1994) (Table).

¶40 The appellant further asserts that the penalty was not consistent with those imposed upon other employees for the same or similar offenses, and she identifies the Acting Deputy CSO and the deciding official as "more guilty" than she was because the Acting Deputy CSO certified that the two positions were necessary, and the "penalty decision was based on a totally unrelated offense," respectively. PFR File, Tab 4 at 33-34. We disagree. As we clarified in *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶¶ 10, 13-14, in assessing a claim of disparate penalty, such as the appellant's, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offense differently. There is no evidence that either the Acting Deputy CSO or the deciding official was charged with comparable misconduct. Nor has the appellant alleged that either agency official engaged in the breadth or scope of misconduct that we have sustained against her in this matter.

¶41 Finally, the appellant asserts that, after the agency initiated charges against her, she was rated as "Exceeded Expectations" in her SES performance appraisal, was given a nearly $8,000 performance award, and was deployed for a high-profile assignment. *Id.* at 33; IAF, Tab 82 at 180-204, 206. In some cases, issues of performance can fairly be separated from issues of misconduct, *see Price v. Veterans Administration*, 13 M.S.P.R. 107, 110 (1982), but in others they cannot, *see Valles v. Department of State*, 17 F.4th 149, 151-52 (Fed. Cir. 2022). Considering the appellant's position as CCHCO and the nature of the charged misconduct, we agree with her that there appears to be some tension between the performance evaluation and the removal action in this case. For instance, the appellant was rated at the top of the "Achieved Expectations" level for the core competency of "**Principled** – adheres to the highest ethical standards of public service and promotes a culture of integrity within DHS." IAF, Tab 82 at 182. Nevertheless, the appellant's argument about her post-proposal evaluation, award,

and assignment goes not to the charge itself but to her supervisor's trust and confidence in her.  PFR File, Tab 4 at 33.  Specifically, she argues that the deciding official's loss of trust and confidence is irrelevant because the deciding official was not in her chain of command.  *Id*.  The Board has held, however, that the penalty judgment belongs to the agency, not to an appellant's supervisor, and that, in the absence of an agency's failure to consider the relevant *Douglas* factors adequately, a supervisor's opinions are insufficient to overcome the agency's judgment concerning the appropriateness of the agency-imposed penalty.  *Batara v. Department of the Navy*, 123 M.S.P.R. 278, ¶ 7 (2016); *see Gebhardt v. Department of the Air Force*, 99 M.S.P.R. 49, ¶¶ 19-21 (2009).   Therefore, notwithstanding the performance evaluation and other indications that the appellant's immediate supervisor maintained trust and confidence in her, we find a legitimate basis for the deciding official's loss of trust and confidence, and we find that she properly considered this to be an aggravating factor.  IAF, Tab 6 at 40.   According to the vacancy announcement for the CCHCO position, the appellant "has full authority and responsibility for formulating and implementing agency-wide personnel policies and programs," she serves as the agency's "authoritative expert on all issues pertaining to human capital," and she "[p]rovides leadership and direction in preserving the integrity of merit principles."  IAF, Tab 78 at 107-08.  Her misconduct was antithetical to the very purpose of her CCHCO position, and this fact supports a significant penalty.  *See, e.g.*, *Batts v. Department of the Interior*, 102 M.S.P.R. 27, ¶¶ 2, 13 (2006) (finding that a removal penalty was appropriate when the appellant, an Alternative Dispute Resolution Coordinator and Equal Employment Opportunity Specialist, was charged with unwelcome kissing and hugging of a female coworker); *Zazueta v. Department of Justice*, 94 M.S.P.R. 493, ¶¶ 1-2, 8 (2003) (upholding the removal of a Border Patrol Agent, who had received cross-designation to enforce Federal drug laws, based on a positive test for illegal

drug use), *aff'd*, 104 F. App'x 166 (Fed. Cir. 2004).  Accordingly, we conclude that the removal penalty is reasonable.

¶42    We have considered the appellant's remaining arguments on review, but we conclude that a different outcome is not warranted.

## NOTICE OF APPEAL RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            /s/ for

                           Jennifer Everling
                           Acting Clerk of the Board

Washington, D.C.